UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARLINE YOUNG, et al.,

    Plaintiffs,

v.

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW), LOCAL 651, et al.,

    Defendants.
    _____/

Case No. 15-11151

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT GM'S MOTION TO DISMISS [25]**

This matter is before the Court on Defendant General Motors' Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(c). (Docket no. 25.) On December 1, 2015, the Court entered an Opinion And Order Granting UAW Defendants' Motion To Dismiss [16] And Denying Plaintiffs' Requests To Amend Complaint; that opinion and order is incorporated herein. (Dkt. no. 23.) The December 1, 2015 opinion and order dismissed all but two of the 93 Plaintiffs, and dismissed Plaintiffs' remaining claims against UAW Defendants. (Opinion and Order Granting UAW Defendants' Motion To Dismiss, December 1, 2015, dkt. no. 23.) The Court recently denied Plaintiffs' motions to amend complaint as to Defendant GM (dkt. no. 31) and UAW Defendants (dkt. no. 28), and denied Plaintiffs' motion for reconsideration of the December 1, 2015 opinion and order granting the UAW Defendants' motion to dismiss (dkt. no. 27). (Dkt. no. 34.) The Court held a hearing on this matter on February 17,

2016.[1]

## I. FACTS

Plaintiffs were 93 former employees of Delphi Corporation (now a remaining two: Plaintiffs Shante Marshall and JaKeiya Anderson), who are currently employees of Defendant General Motors, LLC ("GM") and who work at the following plants within the Eastern District of Michigan: Flint Assembly, Davison Road CCA, Lansing Grand River, Flint Engine South, Flint Stamping or Lansing Delta. (Pls.' Compl. ¶ 4.) Plaintiffs brought suit against three defendants: International Union United Automobile, Aerospace and Agricultural Implement Workers of America, Local 651 ("Local 651"), International Union United Automobile, Aerospace and Agricultural Implement Workers of America ("International," together "UAW Defendants") and General Motors, LLC ("GM"). (Compl. ¶ 5.) Plaintiffs' Complaint asserts a classic hybrid section 301 claim, alleging that the defendant employer violated Plaintiffs' rights under several collective bargaining agreements, associated supplemental agreements and memorandums of understanding, and that the defendant unions breached their duty of fair representation. Plaintiffs claim that Defendant GM violated collective bargaining and related agreements because Plaintiffs remain at a lower Tier II wage level and they should be paid at the higher Tier I wage level at GM and that the UAW Defendants violated their duty of fair representation. The claims

---

[1] On December 31, 2015, Plaintiffs filed a motion for extension of time to file a response to Defendant GM's motion to dismiss. (Dkt. no. 30.) By text order on January 6, 2016, the Court ordered that Plaintiff's response (although the order calls it a "reply") was due "not later than Feb 3, 2016." Plaintiffs did not file a response. At the hearing, Plaintiffs' counsel requested that the Court consider Plaintiffs' response to the UAW Defendants' motion to dismiss, as the motions have common issues, and the Court has done so.

against UAW Defendants have been dismissed.[2] (Dkt. no. 23.)

**A. Background**

The parties agree that in the early to mid-2000's, the automotive industry, including Delphi Corporation, was experiencing financial problems and heading into an economic downturn.[3] (Compl. ¶ 7.) In 2004, the UAW and Delphi entered into a Supplemental Agreement ("2004 Supplemental Agreement) effective May 3, 2004. (Compl. ¶ 37; UAW Defs.' Mot., Ex. 1.) The terms of the 2004 Supplemental Agreement applied to "all hourly bargaining unit employees newly hired on or after the Effective Date at all Delphi facilities covered by the UAW-Delphi National Agreement, including temporary employees on the roll prior to the Effective Date who are subsequently converted to permanent status."[4] (UAW Defs.' Mot., Ex. 1, Article 1; Compl. ¶ 14. ) The 2004 Supplemental Agreement set up a second tier or lower wage rate for those incoming employees. (Compl. ¶ 14; 2004 Supp. Agr., UAW Def's Mot., Ex. 1.) As Plaintiffs' attorney clarified at the hearing, the majority of Plaintiffs began working for Delphi in 2006. (Compl. ¶ 14.) They were paid at the lower Tier II levels pursuant to the 2004 Supplemental Agreement. (Compl. ¶ 14.) Some

---

[2] Defendant GM states that it does not dispute the operative facts set forth in the Court's December 1, 2015 opinion and order granting UAW Defendants' motion to dismiss. (Def. GM's Mot. Dismiss 2 n.1.)

[3] By way of background, in 1999 GM spun-off a portion of its parts manufacturing operations to Delphi Corporation. (Compl. ¶¶ 5, 6; UAW Defs.' Mot. 3.) As a result, GM employees at those operations began working at Delphi, including some of the Plaintiffs. (Compl. ¶ 6.)

[4] Plaintiffs' Complaint does not refer to the 2004 Supplemental Agreement by name, yet Plaintiff conceded that "[t]hose plaintiffs who began working for Delphi in 2006 . . . had been paid at Tier II levels at Delphi . . . ." and referenced "various agreements." (Compl. ¶¶ 14, 38.)

Plaintiffs had worked at GM prior to the Delphi spin-off in 1999. (Compl. ¶ 6.) Despite these cost-saving measures, Delphi filed for Chapter 11 bankruptcy in 2005. (UAW Defs.' Mot. 5; *see also In re Delphi Corporation, et al*, Case No. 05-44481, 2008 WL 3486615 (Bankr. S.D.N.Y. Aug. 11, 2008).)

Plaintiffs allege that pursuant to a Memorandum of Understanding between Delphi and the International UAW, signed on November 21, 2006, all supplemental (temporary) employees in UAW-Delphi plants on or before November 20, 2006 would be converted to permanent employees and alleges that all Plaintiffs were considered permanent Delphi employees. (Compl. ¶¶ 8.)

On June 22, 2007, after Delphi had filed for bankruptcy, the UAW, Delphi and GM signed the "UAW-Delphi-GM Memorandum of Understanding Delphi Restructuring" or, as the parties refer to it, the "Restructuring Agreement" ("2007 RA"). This agreement figures prominently in Plaintiffs' claims. (Compl. ¶ 9; UAW Defs.' Mot., Ex. 2.) The 2007 RA provided that the "UAW-Delphi Supplemental Agreement dated April 29, 2004 . . . shall continue in full force and effect, as modified herein, for its stated duration, . . . ." (2007 RA, Part A.) The 2007 RA included provisions under which GM agreed to absorb employees at some Delphi plants, and it also included retirement, buy out and buy down provisions, discussed in further detail, below.

Plaintiffs allege that pursuant to the 2007 RA, 1000 employees were to be "transferred to GM as permanent employees, keeping their same wage rates, same seniority and same spot on the wage progression scale (which governed pay increases)." (Compl. ¶ 9.) Plaintiffs allege that this should have included all Plaintiffs. The 2007 RA also included a designation for what it called "Footprint Sites", and the Flint East site was one of these

4

footprint sites. (Compl. ¶ 18.) The 2007 RA provided that Flint East employees would transfer to employment with a third party by December 31, 2008, and if not, GM and the UAW would "implement a solution such that these bargaining unit employees will no longer remain as Delphi employees." (Compl. ¶ 18; UAW Defs.' Mot., Ex. 2 at 3-4.)

By March, 2008, only 230 employees were transferred to GM from Delphi. (Compl. ¶ 10.) On January 5, 2009, GM hired all Delphi employees, including Plaintiffs, pursuant to the 2007 RA. (Compl. ¶ 11.) Those employees were paid at Tier II wage levels from 2009 to present. (Comp. ¶¶ 13, 14.) Plaintiffs argue that with migration to GM they should have gained greater seniority and Tier I wages, in part because they had Delphi seniority that predated GM's introduction of its own two tier wage system in 2007. (Compl. ¶ 14.)

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (citations omitted). It is well established that when considering a motion under Rule 12(c), a district court employs the same standard as it would for a motion to dismiss under Rule 12(b)(6). *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). Therefore, the Court must determine whether the complaint "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich*, 668 F.3d at 403 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Under the Supreme Court's heightened pleading standard, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Estate of Barney v. PNC Bank, Nat'l Assoc.,* 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). Furthermore, while the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney*, 714 F.3d at 925 (citing *Iqbal*, 556 U.S. at 679; quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555 (internal quotations and citation omitted).

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed.R.Civ.P. 10(c)). "A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* at 335-36; *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999)(documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint

6

and is central to the plaintiff's claim") (internal quotation marks and citations omitted). This is especially relevant here, where Plaintiffs provided no documents with their Complaint, yet reference a plethora of agreements that are central to their claims. In the time since the filing of the Complaint, the relevant documents which were referred to and are integral to Plaintiffs' claims were provided with UAW Defendants' motion to dismiss and were considered by the Court in that motion, are part of the record and are incorporated herein as they are integral to Plaintiffs' claims and were referred to therein.

### III. ANALYSIS

Plaintiffs bring a hybrid § 301 claim. A hybrid § 301 claim is "the consolidation of two separate but interdependent actions: one against the employer for breach of the collective-bargaining agreement and one against the union for breach of the duty of fair representation." *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1238-39 (6th Cir. 1993). "To prevail under any claim, the employee must show both that the employer discharged him in violation of the collective-bargaining agreement *and* that the union breached its duty of fair representation during the grievance process. Therefore, the two claims are often combined in a single lawsuit and referred to as a hybrid § 301/fair representation claim." *Id.* at 1239 (emphasis in original).

#### A. Plaintiffs' Claims Are Time-Barred And The Statute Of Limitations Tolled As To Only Two Plaintiffs (Marshall & Anderson) Who Exhausted Administrative Remedies By Filing And Signing An Internal Appeal

Defendant GM argues that, as with UAW Defendants, the claims of 91 Plaintiffs who did not pursue the internal appeal and thus did not file within the six-month statute of limitations should be dismissed as to Defendant GM. The Court agrees under the same

analysis set forth in its December 1, 2015 opinion and order granting UAW Defendants' motion to dismiss. (Dkt. no. 23.) The Court determined that Plaintiffs' claims are time-barred and the statute of limitations tolled as to only two Plaintiffs (Marshall & Anderson) who had exhausted administrative remedies by filing and signing an internal appeal.

### B. The Complaint Does Not Specifically Identify The Terms Of The CBA That Were Allegedly Breached

Because the Court determined that the statute of limitations was tolled as to the two Plaintiffs who signed the appeal, the Court considered the remainder of the claims as to those two Plaintiffs. (Opinion and Order Granting UAW Defendants' Motion To Dismiss, Dec. 1, 2015, dkt. no. 23.) That Opinion and Order applies to the issues herein. As set forth above, to prevail on a hybrid § 301 action, Plaintiffs must prove that Defendant GM "violated the terms of the collective-bargaining agreement" and that the UAW Defendants breached their duty of fair representation. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (citing DelCostello v. Teamsters, 462 U.S. 151, 164-65 (1983)). No liability attaches to either defendant (union or employer) unless both prongs of the hybrid § 301 claim are established. *See Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 (6th Cir. 1999). In its motion to dismiss, Defendant GM relies on Plaintiffs' failure to identify a CBA term that GM actually breached. Defendant GM argues that "none of the Plaintiffs have asserted a valid claim against GM under Section 301 of the Labor-Management Relations Act." (Def. GM's Mot. Dismiss 4.)

In considering whether Plaintiffs stated a valid claim against the UAW Defendants for breach of the duty of fair representation in UAW Defendants' motion to dismiss, the Court had to consider whether Plaintiffs had stated a valid claim for violation of the Collective

Bargaining Agreements (CBAs) because the union is afforded a "wide range of reasonableness . . . in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). "[A] union does not breach its duty of fair representation by rejecting an employee's interpretation of the collective bargaining agreement unless the union's interpretation is itself arbitrary or unreasonable." *Bache v. Am. Telephone and Telegraph*, 840 F.2d 283, 291 (5th Cir. 1988). In that analysis, the Court agreed with UAW Defendants that although Plaintiffs advanced multiple grounds for their § 301 claims, they failed to identify a violation of any specific contract term. (Dkt. no. 23.)

"It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Harris v. Am. Postal Workers Union*, 198 F.3d 245, 1999 WL 993882, at *4 (6th Cir. Oct. 19, 1999); *see also Northhampton Restaurant Group, Inc. v. FirstMerit Bank, N.A.*, 492 Fed. Appx. 518, 522 (6th Cir. 2012) ("failed to state a claim for breach of contract upon which relief could be granted, and dismissal of that claim was appropriate"). "Without the introduction of the alleged terms, neither the district court nor the jury can find for Plaintiff." *Harris*, 1999 WL 993882, at *4.

In its December 1, 2015 opinion and order granting UAW Defendants' motion to dismiss, the Court considered in detail Plaintiffs' claim that Defendant GM breached the CBA and related agreements.[5] (Dkt. no. 23.) Plaintiffs' claims ignore the 12(b)(6) standard,

---

[5] At the time of the instant motion and hearing, the Court had already considered and ruled on Plaintiffs' motion for leave to file an amended complaint and motion for reconsideration. (Dkt. nos. 28, 31.) Plaintiffs' allegations, then, as now, continue to lack specific contract provisions in support of their assertions that Defendant GM breached

whereby Plaintiffs' Complaint must "state a claim for relief that is plausible on its face." *Estate of Barney*, 714 F.3d at 924. Plausibility is not a "probability requirement," yet it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Plaintiffs' claims do not meet the standard. "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

As set forth in the Court's prior opinion and order, Plaintiffs identified no contract language that requires the Delphi employees to have been returned to Tier I wages at Delphi or GM. Despite Plaintiffs' general references to agreements and memorandums of understanding dating back to 1999, their allegations remain vague and conclusory at best, lacking citation to specific relevant contractual provisions that contain language that supports their inferences and conclusions. Plaintiffs have not plead sufficient facts to state a claim for relief based on a breach of the CBA or related agreements.

The Court already found that Plaintiffs' pleadings do not support a claim that the UAW Defendants acted outside of a "wide range of reasonableness," and breached their duty of fair representation where Plaintiffs made allegations without citation to supporting facts.[6]

---

the CBA and other agreements. The Court denied Plaintiffs' motions for reconsideration and for leave to file an amended complaint. (Dkt. nos. 27, 28, 31, 34.)

[6]The Court also found that the Complaint did not allege an independent duty of fair representation claim against the UAW Defendants.

(Op. and Order Dec. 1, 2015, dkt. no. 23.) As set forth above, to prevail under a hybrid § 301 claim, the employee must show both that the employer breached the collective bargaining agreement and that the "union breached its duty of fair representation during the grievance process." *Robinson*, 987 F.2d at 1239. These two claims are interdependent, "if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990).

> The Sixth Circuit has made clear that
>
> "In this hybrid suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover against *either* the Company *or* the Union, [Plaintiff] must show that the Company breached the Agreement and that the Union breached its duty of fair representation. Unless [Plaintiff] demonstrates both violations, he can not succeed against either party.

*Bagsby v. Lewis Bros., Inc. of Tennessee*, 820 F.2d 799, 801 (6th Cir. 1987) (citations omitted, emphasis in original); *see also Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) ("Without sufficient evidence that Local 327 breached its duty of fair representation, Garrison's hybrid § 301 action must fail. Accordingly, we need not address Cassens's alleged breach of the collective bargaining agreement, or the numerous other issues that Cassens has raised on appeal. Because we reverse the denial of Cassens's motion for judgment as a matter of law, we consider whether any grounds exist that might warrant a new trial."). In the instant case, this Court has already found that Plaintiffs have not plead sufficient facts to state a hybrid § 301 claim that is plausible on its face, including a breach of the Union's duty of fair representation, and have not plead sufficient facts to show a breach of the CBA by Defendant GM. For these reasons and those set forth in the

Court's December 1, 2015 Opinion and Order, the Court will dismiss the Complaint against Defendant GM.

## IV. RECOMMENDATION

**For the reasons set forth herein, the Court GRANTS Defendant GM's motion to dismiss pursuant to Fed. R. Civ. P. 12(c) (dkt. 25) and DISMISSES the Complaint against Defendant GM with prejudice.**

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: April 7, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 7, 2016, by electronic and/or ordinary mail.

        S/Carol J. Bethel
        Case Manager